IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOM REED and MICHAEL ROY, individually and on behalf of all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>BREX, INC., et al.,<br><br>**Defendants.** | Case No. 3:17-CV-292-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment from Plaintiffs Tom Reed and Michael Roy ("Plaintiffs") on Liability Issues, a separate Motion for Summary Judgment from the Plaintiffs on the Affirmative Defenses Presented by Defendant Brex, Inc. ("Brex"), and a Motion for Summary Judgment from Brex. For the reasons set forth below, the Court grants in part and denies in part the motions.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of claims for overtime compensation and unfair work practice brought by automotive technicians employed by Brex against their employer (Doc. 1). Brex owns and operates a chain of 27 "CarX" brand automotive repair shops in Illinois and Missouri (Doc. 115 at 2). Brex employs automotive technicians at its stores to service and repair customer vehicles (*Id.*). Brex tracks both the specific repairs performed by each automotive technician as well as the hours that the technicians work (*Id.* at 3). The sum

of money that Brex receives for the repairs performed by an individual technician in a given week is aggregated as the technician's "Sales Production" for that week (*Id.*). In 2008, Brex adopted an "Hourly Bonus Production Scale" ("Scale") to determine individual technician compensation based on "Sales Production," the dollar value assigned by Brex to the jobs completed by the technician, excluding certain costs such as tire sales (Doc. 111 at 3). Brex has indicated that it originally wished to simply express commission as a percentage of sales production, but it found that technicians had difficulty understanding their earnings when expressed as a percentage (*Id.* at 3). The Scale, as implemented, instead expressed earnings as an hourly amount or "Hourly Bonus" which was determined by dividing Sales Production by hours worked and then assigning an hourly rate roughly equivalent to the percentage of Sales Production that Brex wished to pay to employees (*Id.* at 3–4). Brex has conceded in depositions and court filings that this manner of expressing compensation does involve some consideration of the hours worked, though it contends that the actual amount of compensation is still based on gross sales production (Doc. 111 at 5–7).

In order to ensure that the Scale did not violate the requirement under the federal Fair Labor Standards Act ("FLSA") that commission employees be paid at least one and one-half times the applicable minimum wage, the Scale additionally includes a minimum guaranteed commission ("Guarantee"), which is equivalent to one and one-half times the applicable minimum. In the event that a technician's compensation based on Sales Production fell below the Guarantee, the technician would instead be paid the Guarantee. In these events, technicians were not required to subsequently make up the shortfall

between sale-based compensation and the Guarantee through any subsequent "reconciliation" in which later commission would be deducted in the amount that the Guarantee had previously exceeded commission earnings (Doc. 111 at 9).

In 2010, Brex was audited by the Wages and Hours Division of the U.S. Department of Labor ("DOL") (Doc. 111-23). Brex has indicated that based on this DOL audit, the documents received from the DOL, and DOL regulations and guidance information, it believed its Scale conformed to the requirements of the FLSA (Doc. 119). The documents provided by Brex in relation to the DOL audit do not describe the scope of the audit and do not indicate any opinions provided by DOL as to the validity of the Scale, though Mr. Keeley has stated that a DOL auditor discussed the Scale with him in a telephone conversation (Doc. 111-23; Doc. 113 at 2).

Brex has stated that Plaintiff Michael Roy began working at Brex in January 2015, more than two years before filing the instant action (Doc. 119 at 4). Brex states that certain other plaintiffs began working for Brex more than three years before joining the lawsuit (*Id.* at 5). Brex has stated that since the creation of the Scale, all technicians have been instructed about the Scale in the recruitment process and upon commencing employment with Brex and have accepted the Scale as a condition of employment (Doc. 113 at 3). Brex has further noted that Plaintiffs indicated in their depositions that the only matter for which they were not paid during their time at Brex was a "Valvoline meeting," and that Plaintiff Tom Reed has indicated that he in fact was paid for this meeting (Doc. 117-7 at 16; Doc. 117-9 at 20–21).

John Keeley and Kevin Floyd are co-owners of Brex, and Plaintiffs have sought to hold them individually liable for the allegations in the complaint (Doc. 1). Mr. Keeley is General Manager and Vice President of Brex, while Mr. Floyd is Director of Operations (Doc. 111). Both individuals expressed in depositions that they have significant authority over personnel matters at Brex, with power to hire, fire, and direct employees (Doc. 111 at 15–16). Brex argues, however, that Mr. Floyd had no input into the creation or implementation of the Scale and that Mr. Keeley prepared the Scale only with the approval and input of others (Doc. 118 at 16).

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317,232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence[.]" *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

"The ordinary standards for summary judgment remain unchanged on cross-motions for summary judgment: we construe all facts and inferences arising from them in favor of the party against whom the motion under consideration is made." *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017).

## ANALYSIS

### I. Plaintiffs' Motion for Summary Judgment on Liability Issues and Brex's Motion for Summary Judgment

Plaintiffs have filed a Motion for Summary Judgment regarding the liability issues connected with their claims under the FLSA; Brex has filed a cross-motion for summary judgment on the same FLSA claims, as well as on state statutory and common law claims. As these motions largely turn on the same questions of law and fact, the Court will consider them together.

#### A. Applicable Law

The FLSA provides in relevant part that no employer shall employee any employees for a workweek longer than forty hours unless such employee receives overtime compensation at a rate not less than one and one-half times the regular rate of the employee's pay. 29 U.S.C. § 207(a). The FLSA includes a number of exceptions to this rule, including the "retail and service exception," which provides that employers will not

be deemed to violate the overtime rule by employing an employee of a retail or service establishment in excess of 40 hours a week if (1) the employee's pay is at least one and one-half times the minimum hourly rate, and (2) more than half of the employee's compensation represents commissions on goods and services. 29 U.S.C. § 207(i).

The language of the statute does not clarify what constitutes a commission, but goes on to state that "all earnings from . . . a *bona fide* commission rate shall be deemed commissions . . . without regard to whether the computed commissions exceed the draw or guarantee." *Id.* (emphasis added). The Seventh Circuit has interpreted this language, holding that a bona fide commission must be "decoupled" from the actual time worked. *Yi v. Sterling Collision Centers*, 480 F.3d 505, 509 (7th Cir. 2007) (Posner, J.). This "decoupling" means that pay should increase based on jobs completed, not based on hours worked, though naturally more hours may mean more jobs completed. *See id.* Indeed, the requirement that hours be "decoupled" from earnings does not mean that hours worked cannot be considered at all in the calculation of compensation. *See id.* at 508. In *Yi*, Judge Posner used the example of two realtors dividing the commission on a home based on which realtor had put in more hours, clarifying: "Does this mean, because the number of hours they worked figured in their split . . . they weren't paid a commission, but an hourly wage? Surely not." *Id.*

In addition to providing a bona fide commission, decoupled from time worked, the language of the FLSA requires that commissions make up more than half of employee compensation for the exemption to apply (the "50% Rule"). In the context of commission schemes with minimum guaranteed commissions, commonly termed guarantees or

draws, the express language of the FLSA provides that: "Under a bona fide commission plan all of the computed commissions will be counted as compensation representing commissions even though the amount of commissions may not equal or exceed the guarantee or draw in some workweeks." 29 U.S.C. § 207(i).

Just as the FLSA does not define bona fide commission, however, neither does it clarify what types of minimum payments will constitute a guarantee or draw that may be counted as commission for the 50% Rule. Where a statute is ambiguous, a court defers to an agency's reasonable interpretation. *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1987). Here, DOL regulations provide some guidance, clarifying that guarantees "are normally smaller in amount than the commission earnings expected . . . if they prove to be greater, a deduction of the excess amount from commission earnings . . . may or may not be customary[.]" 29 C.F.R. § 779.416(a). Such guarantees will not constitute commission if paid as a salary, but will be treated as commission if they "actually function[] as an integral part of a true commission basis of payment." *Id.* The DOL regulations provide an example of a commission system with a guarantee, describing a system in which a guarantee is paid and periodically "a settlement is made at which time the payments already made are supplemented by any additional amount by which his commission earnings exceed the amounts previously paid." 29 C.F.R. § 779.413(a)(5). This description does not necessarily contemplate a reconciliation event in which employees must pay back arrears, or amounts by which the guarantee exceeded actual commission, in later weeks where the commission exceeds the guarantee—however, DOL regulations

indicate that such a reconciliation "may or may not be customary under the employment arrangement" 29 C.F.R. § 779.416(a).

Plaintiffs cite two unpublished decisions from district courts that have interpreted provisions relating to guarantees and the 50% Rule and have held that "[a] bona fide draw or guarantee must periodically be reconciled with the actual commissions earned." *Tillis v. South Floor Covering, Inc.*, 2018 U.S. Dist. LEXIS 162608 (S.D. Miss.); *see also Keyes v. Car-X Auto Services*, 2009 U.S. Dist. LEXIS 108981 (S.D. Ohio) (holding guarantee did not count towards commission where employer "did not calculate a setoff or overpayment in weeks in which [the employee] earned extra for commissions"). These courts cite to earlier decisions in cases that do not in fact support the requirement of reconciliation for a guarantee to be considered bona fide. *See Viciedo v. New Horizons Computer Learning Center of Columbus*, 246 F. Supp. 2d 886, 898 (S.D. Ohio 2003) (holding that where entire commission was added onto the draw, rather than the draw constituting part of the commission in commission scale, draw was "more like a salary"); *Donovan v. Highway Oil, Inc.*, 1986 U.S. Dist. LEXIS 22560 (D. Kan.) (holding where guarantee subject to deductions for time not worked in pay period that pay plan actually constituted quota bonus system, not commission).

Brex has cited a number of cases, many unpublished, in support of its contention that a non-recoverable guarantee should be counted as commission for the 50% Rule, yet most of the cases cited do not in fact fully support this position. *See Erichs v. Venator*, 128 F. Supp.2d 1255, 1259–60 (N.D. Cal. 2001) (holding that guarantee may be counted towards commission, but not addressing whether reconciliation and prescribing a "smell

test" to assess the effects and purpose of the payment scheme); *Crawford v. Saks & Co.*, 2016 U.S. Dist. LEXIS 71805 at *15 (S.D. Tex.) (holding that guarantee counted towards commission where guarantee had reconciliation); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 334 (S.D.N.Y. 2010) (denying summary judgment due to factual gaps and not addressing issue of reconciliation); *Lee v. Ethan Allen Inc.*, 651 F. Supp. 2d 1361, 1367 (N.D. Ga. 2009) (approving a guarantee that had reconciliation).

In addition to the 50% Rule, a single unpublished decision from the Northern District of Illinois expresses an alternative basis for finding a commission plan to not qualify for the retail and service exception. In *Dyal v. Pirtano Construction, Inc.*, 2018 U.S. Dist. 49887 at * (N.D. Ill.), the court noted that the purpose of a bona fide commission is to incentivize workers to worker faster, not longer hours, holding where workers consistently exceeded 2,000 hours per year that there was a dispute of fact as to whether the payment system actually incentivized workers and thus constituted a commission.

In addition to organizations, individual owners or managers of a business may be found to be "employers" for the purposes of the FLSA and held individually liable for FLSA violations committed by a business. *See, e.g.*, *Karr v. Strong Detective Agency*, 787 F.2d 1205, 1206–08 (7th Cir. 1985); *Gonzalez v. J. Salerno & Son, Inc.*, 2018 U.S. Dist. LEXIS 44603 at *9–10 (N.D. Ill.). In determining if an individual constitutes an employer, courts should look to the economic reality of an employment relationship and ascertain whether the individual had sufficient control over the business and the employer so as to have had control over the alleged FLSA violation.

### B. Discussion

Plaintiffs argue firstly that Brex's Scale did not constitute a bona fide commission plan because it did not decouple commissions from hours worked. Second, in the alternate, Plaintiffs argue that even if Brex's Scale did constitute a bona fide commission, it does not qualify for the retail and service exception because of the guaranteed minimum commission, which does not count towards assessing whether the scheme has met the 50% Rule. Lastly, Plaintiffs argue that Keeley and Floyd are individually liable based on their level of control over Brex employees.

*Bona Fide Commission*

Here, Plaintiffs and Brex are in agreement about the underlying facts surrounding the function of the Scale, but differ as to how they interpret the law surrounding bona fide commissions and how it should be applied to the Scale. Brex does not deny that the Scale involves payment of a rate that is expressed in hours, and that consideration of hours worked is a "factor" in determining this rate. When statements by Brex are taken out of context, they might appear to indicate that the Scale is not sufficiently decoupled from hours worked. However, both Plaintiffs and Brex are also in agreement that the company documents outlining the function of the Scale are accurate, and these clearly show that while expressed as an hourly rate, the Scale is based on sales production, and compensation does not increase with hours worked except to the extent that a technician is theoretically more likely to complete more sales in a greater number of hours.

The mere fact that hours are referenced in the Scale does not prevent the Scale from being a bona fide commission plan, decoupled from hours. As the Seventh Circuit

discusses in *Yi*, this decoupling refers to the basis of pay being job completion, not hours, and does not forbid the expression of compensation as an average hourly rate. Thus, even drawing all reasonable inferences in favor of Plaintiffs, the undisputed mechanism of the Scale as outlined in the documents provided and the testimony of Brex managers is sufficient to establish that the Scale is a bona fide commission plan. The quotes used by Plaintiffs from depositions of Brex managers do not establish a factual issue as to whether or not the Scale constitutes a bona fide commission, as these merely indicate the use of hours to express sales-based compensation as an average hourly rate, not that hours actually might constitute the basis of compensation. For this reason, on the issue of whether the Scale is a bona fide commission, the Court grants summary judgment to Brex.

*The 50% Rule*

Both Plaintiffs and Brex agree that the Scale involves payment of a minimum guaranteed rate when the standard commission-based rate would fall below one and one-half times the applicable minimum wage. They differ as to whether this guarantee should count towards the 50% Rule, citing conflicting court decisions.

Plaintiffs rely heavily on *Tillis* and *Keyes*, which explicitly require reconciliation for a guarantee to count towards commission. This approach to a guarantee does not appear to be supported, however, by the plain language of the statute or regulations. Indeed, the DOL regulations indicate that reconciliation "may or may not be customary," indicating that there are situations where reconciliation may not be required for a guarantee to be considered commission. Nevertheless, the fact that reconciliation is not per se required does not mean that a guarantee without reconciliation will always constitute commission.

The question of whether or not a guarantee will count towards commission is not a black and white issue of whether or not there is reconciliation, but rather requires a more in-depth analysis of whether such a guarantee is "customary to the employment arrangement," looking at the effects and purpose of the payment scheme. In this deeper analysis, neither party has presented sufficient evidence for the Court to confidently state that there is not a material issue of fact, and so the Court denies summary judgment to both parties as to whether or not the Scheme complies with the 50% Rule.

*Dyal*

Plaintiffs assert that in *Dyal*, the Northern District of Illinois has enunciated a new test for whether compensation plan qualifies as a bona fide commission scheme—if it actually incentivizes faster work, which can be seen in the number of hours workers tend to put in. In *Dyal*, the court observed that workers in the enterprise in question consistently put in over 2,000 hours per year, finding that the commission plan did not clearly incentivize faster work and denying summary judgment to the defendant. Observing that technicians at Brex frequently put in over 2,000 hours per year, Plaintiffs argue that based on *Dyal*, the commission plan here too does not comply with the retail and service exception. However, *Dyal* merely declined to give summary judgment to the defendant, and furthermore did so not based solely on consideration of hours worked but other factors as well. The mere showing by Plaintiffs that technicians tend to work over 2,000 hours annually is not sufficient to establish non-compliance. Further facts would be needed to demonstrate that Brex's Scale does not comport with the intent of the

FLSA in a manner similar to that observed in *Dyal*. Accordingly, the Court declines to grant summary judgment to Plaintiffs on this basis.

*Individual Liability*

Plaintiffs argue that Keeley and Floyd should be individually liable as employers based on their overall power over Brex employees, including their roles in the creation and establishment of the Scale. Brex argues that the general control exercised by Keeley and Floyd is not relevant to establishing individual liability, which turns on control over the FLSA violation, and that Keeley and Floyd in fact had limited input into the creation and implementation of the Scale. The Court agrees that general control is not at issue here, and rather that control over the creation and implementation of the Scale is of primary relevance. Defendants point to testimony from Keeley indicating that he created the Scheme on his own, subject only to the approval of his business partner, Jim Isabel (Doc. 117-1 at 12). The mere fact that the Scale was approved by Isabel does not mitigate the fact that Keeley was the Scale's sole author—while this may indicate that Isabel as well had a certain level of control over the Scale, it does not mean that Keely was without control. The Court finds that even taking the facts in the light most favorable to Brex, Keeley had control over the creation of the Scale sufficient to establish individual liability, and the Court grants summary judgment to Plaintiffs on the issue of Keeley's individual liability.

As to the issue of Floyd's individual liability, Brex observes that Floyd had no role in the creation of the Scale, a view that is supported by Keeley's deposition testimony (Doc. 117-1 at 12). This is to some degree contradicted by Floyd's own deposition

testimony, in which he indicated that he had the ability to set pay rates for technicians and had some role in the application of the Scale and its use in hiring (Doc. 111-4 at 4–5, 11–12). Thus, it seems that there is a factual issue as to the extent of Floyd's control over the Scale, and the Court accordingly denies summary judgment to both Plaintiffs and Brex on the issue of Floyd's individual liability.

*State Claims*

In addition to seeking summary judgment on Plaintiffs' FLSA claims, Brex seeks summary judgment on Plaintiffs' claims under state statutory and common law. As Brex's motion for summary judgment on state statutory claims is based on an argument that the analysis for these claims is the same as under the FLSA and the Court has not granted summary judgment to Brex on the FLSA claims, summary judgment also is denied on the state statutory claims. As Plaintiffs have indicated that they agree to dismissal of state common law claims, summary judgment is granted to Brex on these claims.

## II.     Motion for Summary Judgment on Affirmative Defenses

Plaintiffs have moved for summary judgment on Brex's 3rd, 4th, 11th, 12th, 13th, and 14th affirmative defenses. Brex has indicated that it will withdraw its 11th, 13th, and 14th defenses, so the Court proceeds to consideration of the remaining defenses.

*3rd Affirmative Defense: Good Faith Reliance*

### A. Applicable Law

The FLSA establishes an affirmative defense for any employer who "proves that the act or omission complained of was in good faith in conformity with and in reliance

on any written administrative regulation, order, ruling, approval, or interpretation, of [the Wage and Hour Division of Department of Labor] . . . or any administrative practice or enforcement policy of such agency." 29 U.S.C. § 259. This defense is "intended to apply only where an employer innocently and to his detriment, followed the law as it was laid down to him by government agencies, without notice that such interpretations were claimed to be erroneous or invalid." *Krieg v. Pell's, Inc.*, 2002 U.S. Dist. LEXIS 4861 at *8 (S.D. Ind.) (*citing Olson v. Superior Pontiac-GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir. 1985). To establish the defense, an employer must prove: (1) that the act complained of was taken in good faith and (2) was in conformity with and (3) in reliance on a *written* administrative interpretation of the Administrator of the Wage and Hour Division of the Department of Labor. *Id.* (emphasis added).

### B. Discussion

Defendants contend that this defense is appropriate based on materials and oral advice received in the DOL audit. However, the written material provided by defendant from the audit do not contain any written opinions as to the validity of Brex's Scale as a commission system under the FLSA (Doc. 111-23). The good faith defense requires reliance on a written administrative interpretation. Accordingly, the Court grants summary judgment to Plaintiffs on Brex's 3rd affirmative defense.

*4th Affirmative Defense: Time Bar*

### A. Applicable Law

The statute of limitations for an overtime violation of the FLSA is generally two years, but can be extended to three years in the event of a willful violation. 29 U.S.C. § 255(a).

### B. Discussion

Plaintiffs argue that Brex bases this defense on a contention that Plaintiffs began employment at Brex several months before commencing suit, and that Brex representatives have stated in depositions that they do not know of any time-barred claims (Doc. 113 at 10; Doc. 111-25 at 5–6). Brex indicates that it in fact contends that Plaintiffs were employed more than two years before commencing suit and that it bases this contention on payroll documents (Doc. 117-10). The payroll document provided does indeed appear to indicate that Plaintiff Michael Roy was employed by Brex as of 1/24/2015, which would be more than two years prior to the date that Plaintiffs' first complaint was filed in this action. Accordingly, there is at least a factual issue as to whether Plaintiffs are barred from bringing suit by the statute of limitations, and the Court denies summary judgment to Plaintiffs on this affirmative defense.

*12th Affirmative Defense: De Minimis Doctrine*

### A. Applicable Law

The *de minimis* doctrine of the FLSA allows employers to disregard otherwise compensable work when only a few seconds or minutes of work beyond the scheduled working hours are in dispute. *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 176 (7th Cir.

2011). When evaluating whether work performed by an employee is *de minimis*, courts typically consider the amount of time spent on the extra work, the practical administrative difficulties of recording additional time, the regularity with which the additional work is performed, and the aggregate amount of compensable time. *Id.*

### B. Discussion

Plaintiffs contend that *de minimis* doctrine is not applicable because representatives of Brex indicated in depositions that none of the work time of technicians was too small to record or administratively impractical to record. Brex has clarified that it argues that the *de minimis* doctrine should be applicable only to Counts II, IV, and IX of Plaintiff's Amended Complaint, which seek recovery for claimed unrecorded work time. Brex notes that at depositions Plaintiffs claimed that the only matter for which their work was not recorded was a single meeting related to Valvoline. Brex has established that in regard to Counts II, IV and IX, there is at least a factual issue as to how much time is claimed as being unrecorded and whether this time was in fact *de minimis*. Accordingly, the Court denies summary judgment to Plaintiffs on this affirmative defense.

CONCLUSION

For the reasons set forth above, the Court **GRANTS in part and DENIES in part** Plaintiffs' Motion for Summary Judgment on Liability Issues (Doc. 111), **GRANTS in part and DENIES in part** Plaintiffs' Motion for Summary Judgment on Affirmative Defenses (Doc. 113), and **GRANTS in part and DENIES in part** Defendants' Motion for Summary Judgment (Doc. 115).

**IT IS SO ORDERED.**

**DATED:   January 28, 2020**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**